IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KIMBERLY R. SOELBERG,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:18-cv-00025-DN-PK<br><br>District Judge David Nuffer |

This case arises from a slip-and-fall incident at the Wal-Mart Store located in Washington, Utah, on June 3, 2017.[1] Plaintiff Kimberly R. Soelberg alleges that Defendant Wal-Mart Stores, Inc. ("Wal-Mart") was negligent for failing to ensure that the Wal-Mart Store's premises were safely maintained, and for failing to warn Ms. Soelberg of the wet floor that caused the slip-and-fall.[2] Wal-Mart seeks summary judgment on Ms. Soelberg's negligence claim.[3]

Because the undisputed material facts show that Wal-Mart had no actual or constructive knowledge of the wet floor prior to Ms. Soelberg's fall, and did not have sufficient time to remedy the condition, Wal-Mart cannot be liable on Ms. Soelberg's negligence claim. Therefore, Wal-Mart's Motion for Summary Judgment[4] is GRANTED.

---

[1] Complaint ¶¶ 9-10, docket no. 2-2, filed May 3, 2018.

[2] *Id*. ¶¶ 17-24.

[3] Defendant's Motion for Summary Judgment ("Motion for Summary Judgment"), docket no. 28, filed Nov. 20, 2019.

[4] *Id*.

# Contents

UNDISPUTED MATERIAL FACTS ................................................................................ 2
STANDARD OF REVIEW ............................................................................................... 5
DISCUSSION .................................................................................................................... 6
    Wal-Mart did not have actual knowledge of the wet floor prior to Ms. Soelberg's fall..... 7
    Wal-Mart did not have constructive knowledge of the wet floor prior to Ms. Soelberg's
        fall, or sufficient time to remove the spill or warn Ms. Soelberg ........................... 8
ORDER ............................................................................................................................ 14

## UNDISPUTED MATERIAL FACTS

1. On June 3, 2017, Ms. Soelberg slipped and fell on wet floor in the Wal-Mart Store in Washington, Utah.[5]

2. On the day of the incident, Ms. Soelberg and a friend, Helen Tibbet, entered the cosmetics aisle of the Wal-Mart Store. Neither noticed any water or wetness on the floor.[6]

3. The Wal-Mart Store's Surveillance Video ("Surveillance Video")[7] shows that Ms. Soelberg and Ms. Tibbet entered and walked down the cosmetics aisle before eventually turning and walking back the way they entered the aisle.[8]

4. On the way back out of the cosmetics aisle, Ms. Soelberg turned to her right, slipped, and fell.[9]

5. Before falling, Ms. Soelberg did not see any water or liquid on the floor.[10]

6. Before Ms. Soelberg's fall, Ms. Tibbet did not see any water or liquid on the floor.[11]

---

[5] Motion for Summary Judgment ¶ 1 at 3.

[6] *Id*. ¶ 2 at 3.

[7] Docket no. 28-4, filed Nov. 20, 2019.

[8] Motion for Summary Judgment ¶ 3 at 3.

[9] *Id*. ¶ 4 at 3.

[10] *Id*. ¶ 5 at 3.

[11] *Id*. ¶ 6 at 3.

7. The Surveillance Video shows that when walking back down the cosmetics aisle before the fall, Ms. Soelberg and Ms. Tibbet moved up and down the aisle and stood and walked near the area where the floor was wet for several minutes, but neither saw the liquid on the floor.[12]

8. After Ms. Soelberg fell and was on the floor, she was able for the first time to see some clear liquid on the floor.[13]

9. Ms. Tibbet noted the liquid on the floor after Ms. Soelberg's fall, and observed the floor was clean and the liquid was difficult to see.[14]

10. Ms. Tibbet did not notice any tracks or marks through the liquid.[15]

11. Ms. Soelberg did not know how long the liquid was on the floor before she slipped, or how it arrived there.[16]

12. Ms. Tibbet did not know how the liquid got onto the floor, or how long it was present before she and Ms. Soelberg walked into the cosmetics aisle.[17]

13. About 10 minutes before Ms. Soelberg's fall, the Surveillance Video shows a woman pushing a cart down the cosmetics aisle. A child was in the cart's basket.[18]

14. The child in the cart's basket drank from a water bottle at 6:10:00, according to the Surveillance Video.[19]

---

[12] *Id.* ¶ 7 at 3.
[13] *Id.* ¶ 8 at 3.
[14] *Id.* ¶ 9 at 4.
[15] *Id.* ¶ 10 at 4.
[16] *Id.* ¶ 11 at 4.
[17] *Id.* ¶ 12 at 4.
[18] *Id.* ¶ 13 at 4.
[19] *Id.* ¶ 14 at 4.

15. The child then lowered the open water bottle to the bottom of the cart at 6:10:05, and again at 6:10:09, which is when the spill occurred.[20]

16. From the Surveillance Video, it appears the cap of the water bottle fell to the ground and was picked up at 6:10:16 by the woman accompanying the child.[21]

17. The Surveillance Video shows Ms. Soelberg entering the same aisle at 6:14:48, under five minutes from when the water was spilled.[22]

18. Ms. Soelberg slipped and fell at 6:20:31, a maximum of 10 minutes and 22 seconds after the child spilled the water on the floor.[23]

19. Olivia Grano, the Wal-Mart Store's assistant manager at the time, responded to the incident after it occurred.[24]

20. Prior to being called to the incident location, Ms. Grano was unaware of a spill on the floor in cosmetics. Ms. Grano never found any employee that knew about the spill before Ms. Soelberg's fall. And Ms. Grano never received any reports of the spill before Ms. Soelberg's fall.[25]

21. Wal-Mart first determined the source of the spill after the incident when reviewing the Surveillance Video, which showed the child with the water bottle.[26]

---

[20] *Id.* ¶ 15 at 4.
[21] *Id.* ¶ 16 at 4.
[22] *Id.* ¶ 17 at 4.
[23] *Id.* ¶ 18 at 4.
[24] *Id.* ¶¶ 19-20 at 4-5.
[25] *Id.* ¶ 21 at 5.
[26] *Id.* ¶ 22 at 5.

22. In the approximate 10 minutes and 30 seconds between when the spill occurred and when Ms. Soelberg fell, no Wal-Mart employees entered the cosmetics aisle.[27]

23. The Surveillance Video shows one Wal-Mart employee walking quickly past the end of the cosmetics aisle at 6:13:07, after the spill and before Ms. Soelberg entered the aisle. The employee was traveling in a perpendicular aisle. The employee passed the aisle without looking down or seeing anything on the floor.[28]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"[30] A fact is material if "it is essential to the proper disposition of [a] claim."[31] And in ruling on a motion for summary judgment, the factual record and all reasonable inferences drawn therefrom are viewed in a light most favorable to the nonmoving party.[32]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[33] The movant "need not negate the nonmovant's claim, but need only point out . . . that there is an absence of evidence to support the nonmoving party's case."[34] If the moving party carries this

---

[27] *Id*. ¶ 23 at 5.

[28] *Id*. ¶ 24 at 5.

[29] FED. R. CIV. P. 56(a).

[30] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[31] *Id*.

[32] *Id*.

[33] *Id*. at 670-71.

[34] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (internal quotations omitted).

initial burden, the nonmoving party "may not rest upon mere allegations or denials of [the] pleading[s], but must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which it carries the burden of proof."[35] "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to defeat a properly supported motion for summary judgment."[36] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[37]

## DISCUSSION

Wal-Mart argues that the undisputed material facts demonstrate that it cannot be liable on Ms. Soelberg's negligence claim.[38] Because federal subject matter jurisdiction over the claim is based on the parties' diversity of citizenship,[39] "the availability of summary judgment [is considered] against the backdrop of the forum state's substantive law."[40] Thus, Utah substantive law applies to Ms. Soelberg's claim.

Under Utah law, "[t]he owner of a business in not a guarantor that . . . business invitees will not slip and fall."[41] The owner "is charged with the duty to use reasonable care to maintain the floor of [the] establishment in a reasonably safe condition for [the] patrons."[42] In situations involving an unsafe condition of a temporary nature, such as a slippery substance on the floor, "[t]he liability of the owner of a store [is] established only when the [temporary] condition

---

[35] *Id.* (internal quotations and citations omitted; emphasis in original).

[36] *Id.* (internal quotations omitted).

[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[38] Motion for Summary Judgment at 7-11.

[39] Notice of Removal to Federal Court, docket no. 2, filed May 3, 2018.

[40] *Evanston Ins. Co. v. Law Office of Michael Medved, P.C.*, 890 F.3d 1195, 1198 (10th Cir. 2018)

[41] *Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 478 (Utah 1996) (internal quotations omitted).

[42] *Id*. (internal quotations omitted).

complained of has existed for a long enough time that the owner should have known about it and corrected it, or has had actual knowledge of the condition complained of."[43] In other words, fault cannot be attributed to the owner unless two conditions are met:

> [(1)] knowledge of the condition, that is, either actual knowledge, or constructive knowledge because the condition had existed long enough that [it] should have [been] discovered[; and (2)] that after such knowledge, sufficient time elapsed that in the exercise of reasonable care [the condition] should have [been] remedied.[44]

**Wal-Mart did not have actual knowledge of the wet floor prior to Ms. Soelberg's fall**

It is undisputed that no Wal-Mart employees entered the cosmetics aisle between when the spill occurred and when Ms. Soelberg fell.[45] It is also undisputed that one Wal-Mart employee walked quickly past the end of the cosmetics aisle after the spill and before Ms. Soelberg's fall.[46] But this employee was traveling in a perpendicular aisle and did not look down or see anything on the floor.[47] These undisputed facts are confirmed and supported by the Surveillance Video.

Ms. Soelberg asserts that a second Wal-Mart employee may have walked past the cosmetics aisle after the spill and before Ms. Soelberg's fall.[48] However, this fact is disputed by Wal-Mart.[49] A second Wal-Mart employee is not clearly observable in the Surveillance Video. But even accepting that a second employee did walk past the cosmetics aisle, there are no facts

---

[43] *Id*. (internal quotations omitted).

[44] *Id*. (internal quotations omitted).

[45] *Supra*, Undisputed Material Facts ¶ 22 at 5.

[46] *Id*. ¶ 23 at 5.

[47] *Id*.

[48] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Response") ¶ 5 at 5, docket no. 32, filed Dec. 18, 2019.

[49] Defendant's Reply Memorandum in Support of Motion for Summary Judgment ("Reply") at 2-3, docket no. 34, filed Jan. 8, 2020.

7

or evidence, and nothing observable in the Surveillance Video, to permit a reasonable inference that the second employee was aware or had actual knowledge of the wet floor. Indeed, Ms. Soelberg presents no facts, evidence, or argument that any Wal-Mart employee had actual knowledge of the wet floor prior to her fall.

Additionally, it is undisputed that the Wal-Mart Store's assistant manager, Ms. Grano, never found any Wal-Mart employee that knew about the spill prior to Ms. Soelberg's fall, and never received any reports of the spill prior to the fall.[50] And it is undisputed that Wal-Mart first determined the source of the spill when reviewing the Surveillance Video after the incident.[51]

Based on the undisputed facts, and the absence of any facts or evidence to permit reasonable inference to the contrary, Wal-Mart did not have actual knowledge of the wet floor prior to Ms. Soelberg's fall.

**Wal-Mart did not have constructive knowledge of the wet floor prior to Ms. Soelberg's fall, or sufficient time to remove the spill or warn Ms. Soelberg**

The undisputed facts demonstrate that the spilled water was not on the floor for a sufficient time before Ms. Soelberg fell for Wal-Mart to discover it, remove it, or warn Ms. Soelberg. Although it is undisputed that one Wal-Mart employee walked quickly past the end of the cosmetics aisle after the spill and before Ms. Soelberg arrived at the aisle, the employee did not look down or see the spilled water.[52] This undisputed fact, viewed in a light most favorable to Ms. Soelberg, does not lead to a reasonable inference that Wal-Mart should have discovered the spill before Ms. Soelberg's fall. And even when the disputed fact that a second employee walked past the cosmetic aisle is considered,[53] the analysis does not change.

---

[50] *Supra*, Undisputed Material Facts ¶ 20 at 4.

[51] *Id*. ¶ 21 at 4.

[52] *Id*. ¶ 23 at 5.

[53] Response ¶ 5 at 5; Reply at 2-3.

8

It is undisputed that the spill was on the floor for a maximum of 10 minutes and 22 seconds before Ms. Soelberg slipped and fell.[54] It is undisputed that the spill was clear water,[55] and that the floor was clean and the water was difficult to see.[56] The spill was made more difficult to detect by the fact that the woman accompanying the child that spilled the water picked up the water bottle's cap, which had also fallen on the floor.[57]

Indeed, it is undisputed that Ms. Soelberg and Ms. Tibbet first entered the cosmetics aisle less than five minutes after the spill, and moved up and down the aisle, standing and walking near the water.[58] And despite their close proximity to the spill for over five minutes, it is undisputed that neither Ms. Soelberg nor Ms. Tibbet noticed that the floor was wet prior to Ms. Soelberg's fall.[59] These undisputed facts are confirmed and supported by the Surveillance Video. The Surveillance Video further demonstrates that numerous individuals walked in and past the cosmetics aisle near the spill before Ms. Soelberg's fall. Only one of these individuals—a young girl wearing sandals, who stepped directly in the water—is shown to have noticed that the floor was wet.

The undisputed facts, as confirmed and supported by the Surveillance Video, show a very unfortunate situation in which a child created a temporary unsafe condition at the Wal-Mart Store by spilling a clear liquid on a clean floor.[60] The spill was on the floor for a relatively short

---

[54] *Supra*, Undisputed Material Facts ¶¶ 13-15, 18 at 3-4.

[55] *Id.* ¶ 8 at 3.

[56] *Id.* ¶ 9 at 3.

[57] *Id.* ¶ 16 at 4.

[58] *Id.* ¶¶ 3, 7, 17 at 2-4.

[59] *Id.* ¶¶ 2, 5-6, 7-9. 11-12 at 2-3.

[60] *Id.* ¶¶ 8-10, 15 at 3-4.

9

duration, was difficult to see, and was not seen, even by people in close proximity.[61] No Wal-Mart employee knew about the spill prior to Ms. Soelberg's fall, and no one reported the spill to Wal-Mart prior to the fall.[62] Under these circumstances, it is not reasonable to infer that Wal-Mart should have discovered the spill before Ms. Soelberg fell, or that Wal-Mart had sufficient time to remove the spill or warn Ms. Soelberg.

The facts of this case present a similar situation to that of *Schnuphase v. Storehouse Markets*.[63] In *Schnuphase*, a patron of a deli slipped on ice cream that a young boy had dropped on the floor.[64] The ice cream was on the floor for two to four minutes before the slip-and-fall.[65] It was undisputed that no employee had actual knowledge that the ice cream was on the floor, and that the store employee in the area was busy and did not see the potentially hazardous condition.[66] The Utah Supreme Court held "the trial court correctly determined [on summary judgment] that because the evidence showed [the defendant's] employees did not know and could not have known of the spill, liability could not be predicated on [a temporary unsafe condition theory of negligence]."[67]

The length of time in which the spill was on the floor before the slip-and-fall in *Schnuphase*, was only two to four minutes,[68] as compared to the 10 minutes and 22 seconds for the spilled water in this case.[69] But in this case, the spill was clear water, not ice cream, which

---

[61] *Id*. ¶¶ 2, 5-10, 13-16, 18, 20, 23 at 2-5; Surveillance Video.

[62] *Supra* Undisputed Material Facts ¶ 20 at 4.

[63] 918 P.2d 476 (Utah 1996).

[64] *Id*. at 478.

[65] *Id*.

[66] *Id*.

[67] *Id*.

[68] *Id*.

[69] *Supra*, Undisputed Material Facts ¶¶ 13-15, 18 at 3-4.

would be more visible than the clear water. And in both cases, "[t]here is no evidence or any basis from which a fair inference [can] be drawn that [the defendant] should have realized there was [a spill] on the floor or that [the defendant] had any opportunity to remove it" or warn the plaintiff.[70] Rather, the undisputed evidence "precludes a reasonable jury from finding that the [spill] had been on the floor for such a period of time that [the] defendant should have known of it."[71]

Ms. Soelberg nevertheless argues that the question should be put to a jury because her expert, John Peterson, opines that the spilled water was on the floor for more than enough time for Wal-Mart to identify the hazard and remedy it.[72] Mr. Peterson asserts that ten minutes is enough time for a properly functioning and managed store to discover a spill.[73] He also opines that Wal-Mart had ample opportunity to discovery the spill because its employees walked past the spill.[74] He asserts that had these employees been complying with industry and Wal-Mart expectations, they would have noticed the spill, stopped, and removed it.[75] Or, at the very least, the employees could have warned customers and guarded the area.[76]

However, it is a" well-settled principle that an expert opinion may not be sufficient to overcome summary judgment if it is conclusory and thus fails to raise a genuine issue of material fact."[77] Ms. Soelberg fails to identify any additional material facts or evidence to support Mr.

---

[70] *Schnuphase*, 918 P.2d at 478.

[71] *Id*.

[72] Response at 7-12

[73] *Id*. ¶¶ 2-3 at 4.

[74] *Id*. ¶¶ 4-5 at 4-5.

[75] *Id*. ¶ 4 at 4.

[76] *Id*.

[77] *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (internal quotations omitted).

Peterson's opinions. Nor does she attempt to set forth as material facts the industry standards or other facts that underlie Mr. Peterson's opinions, other than Mr. Peterson's observation that Wal-Mart employees passed the spill.[78] Rather, she merely presents Mr. Peterson's opinions as additional material facts, and his report as supporting evidence.[79] Considering the undisputed material facts, and in the absence of additional facts and evidence, Mr. Peterson's opinions are conclusory and speculative. Therefore, as presented, Mr. Peterson's opinions fail to raise a genuine issue of material fact for trial.

Utah appellate courts and the District of Utah have rejected similar attempts to defeat summary judgment through speculation that a business's employees could have discovered a temporary unsafe condition had the employees been more vigilant or properly managed. In *Schnuphase*, the Utah Supreme Court rejected the plaintiff's contention that a jury could find that the defendant should have been more vigilant in finding and removing spilled ice cream.[80] The court based its holding on undisputed facts that the ice cream was on the floor for two to four minutes; that no employee had actual knowledge of the spill; and that the employee in the area was busy and did not see the potentially hazardous condition.[81]

In *Blain v. Wal-Mart Stores, Inc.*, the Utah Court of Appeals rejected the plaintiff's attempt to create an issue of fact by arguing that a jury could infer that a spill existed for a sufficient time to impute knowledge to the defendant.[82] The court held that the "[p]laintiff's theory require[d] substantial speculation and leaps of faith which [we]re not supported by the

---

[78] Response ¶¶ 4-5 at 4-5.

[79] *Id*. ¶¶ 1-5 at 4-5.

[80] *Schnuphase*, 918 P.2d at 478-79.

[81] *Id*. at 478.

[82] 2000 UT App 187, 2000 WL 33243778, *1 (Utah Ct. App. June 15, 2000).

evidence, nor appropriate when determining whether a storeowner has actual or constructive knowledge of [a] spill."[83] "To prevail under a constructive knowledge theory, [the] plaintiff must offer some evidence that the spill existed for a sufficient time to warrant imputing knowledge to [the defendant]."[84] And "[a] bare assertion that a store's method of operation created a dangerous condition is not sufficient, absent other supporting evidence to show the store could reasonably foresee it had created a dangerous condition."[85]

And in *Vanicsek v. Wal-Mart Stores, Inc.*, District Judge Dale A. Kimball concluded there was insufficient evidence to impute knowledge of a spill on the defendant, or to allow inference that the defendant had a reasonable opportunity to remedy the condition.[86] Judge Kimball noted that there was no evidence that any employee saw or was informed of the spill, and "[e]ven [the p]laintiff, who was shopping on the aisle, did not see the [spill]."[87] Judge Kimball further noted that there was no evidence of the "[d]efendant's constructive knowledge of the condition because there were no open or leaky containers on the aisle that would have placed employees on notice of the [spill]."[88] "In other words, bare contentions, unsupported by any specification of facts in support thereof, raise no material questions of fact as will preclude entry of summary judgment."[89]

Like the plaintiffs in *Schnuphase*, *Blain*, and *Vanicsek*, Ms. Soelberg has failed to present sufficient facts and evidence to create a genuine issue for trial. The undisputed material facts of

---

[83] *Id*. (citing *Koer v. Mayfair Mkts.*, 431 P.2d 566, 569-70 (Utah 1967)).

[84] *Id*.

[85] *Id*. at *2 (citing *Schnuphase*, 918 P.2d at 479).

[86] No. 1:08-cv-00125-DAK, 2010 WL 1329939, *3 (D. Utah Mar. 29, 2010).

[87] *Id*.

[88] *Id*.

[89] *Id*. (quoting *Schnuphase*, 918 P.2d at 477-78).

this case demonstrate that no reasonable jury could find that Wal-Mart should have discovered the spill before Ms. Soelberg fell, or that Wal-Mart had sufficient time to remove the spill or warn Ms. Soelberg. As the Utah Supreme Court reiterated in *Schnuphase*:

> It is regrettable that plaintiff suffered injuries. However, not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from someone. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured.[90]

This is such a case. Because Wal-Mart had no actual or constructive knowledge of the wet floor prior to Ms. Soelberg's fall, and did not have sufficient time to remedy the condition, Wal-Mart cannot be liable on Ms. Soelberg's negligence claim.

## ORDER

IT IS HEREBY ORDERED that Wal-Mart's Motion for Summary Judgment[91] is GRANTED. Ms. Soelberg's Complaint[92] and this action are DISMISSED with prejudice.

The Clerk is directed to close the case.

Signed April 1, 2020.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[90] 918 P.2d at 479-80 (internal quotations omitted).

[91] Docket no. 28, filed Nov. 20, 2019.

[92] Docket no. 2-2, filed May 3, 2018.